IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TOKYO GWINNETT, LLC
doing business as
Tokyo Valentino,

    Plaintiff,

      v.

GWINNETT COUNTY, GEORGIA,

    Defendant.

CIVIL ACTION FILE
NO. 1:15-CV-2606-TWT

## OPINION AND ORDER

This is an action seeking to enjoin Gwinnett County's current adult entertainment ordinance, and seeking damages for the Gwinnett County's application of its previous ordinance. It is before the Court on the Defendant Gwinnett County's Motion to Dismiss [Doc. 47]. For the following reasons, the Defendant's Motion to Dismiss [Doc. 47] is GRANTED.

### I. Background

The Plaintiff Tokyo Gwinnett, LLC ("Tokyo Valentino") is a Georgia company which owns and operates a retail establishment at 1950 Pleasant Hill Road, Duluth, Georgia. The Defendant Gwinnett County is a political subdivision of the State of

Georgia. Prior to 2015, Gwinnett County managed development within its borders through the use of a Unified Development Ordinance (the "old zoning code").[1] The old zoning code listed a number of potential land uses and the zoning requirements for each use.[2] The old zoning code further provided that "[a]ny use not listed in said table shall be prohibited, except as contained herein. Additionally, for any use not listed . . . the director shall have the authority to determine the most appropriate zoning districts" for any land use not listed in the table.[3]

In May 2015, Tokyo Valentino applied for a business license from Gwinnett County under the old zoning code.[4] In its application, Tokyo Valentino described its use only as "retail" and attached, among other things, a copy of an approved retail tobacco license.[5] On May 26, 2015, Gwinnett County approved the application and

---

[1]    Def.'s Mot. to Dismiss, Ex. 1 [Doc. 47-2]. "While the Court is ordinarily constrained to the allegations contained in a Complaint, a document attached to a Motion to Dismiss may be considered if the attached document is (1) central to the plaintiff's claim and (2) undisputed." Lowman v. Platinum Prop. Mgmt. Servs., Inc., 166 F. Supp. 3d 1356, 1358 (N.D. Ga. 2016) (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).

[2]    Id. at 3-12.

[3]    Id. at 2.

[4]    Second Amended Compl. ¶¶ 25-27.

[5]    Id. at Ex. 3, at 5, 17.

described Tokyo Valentino's business as "Tobacco Stores" on the business license.[6] Less than two weeks later, on June 8, 2015, Tokyo Valentino wrote a letter to the County informing it that the Plaintiff intended to add sexually-explicit DVDs, magazines, and other forms of media.[7] In order to remain outside of Gwinnett County's adult establishment ordinances, Tokyo Valentino intended for this media to occupy less than ten square feet of its floor space.[8] Tokyo Valentino also informed the County that it intended to add various devices designed to stimulate human genitalia.[9] Gwinnett County, believing that these new products would constitute a land use not approved by Tokyo Valentino's existing business license, instructed Tokyo Valentino to file a new license application to cover the new products.[10]

On July 1, Tokyo Valentino submitted a new and more detailed business license application to the County, which included its intention to sell adult sexual devices.[11] In response, the Director of the Gwinnett County Department of Planning and

---

[6]     Id. at 18.

[7]     Second Amended Compl. ¶ 35.

[8]     Id.

[9]     Id. at ¶ 36.

[10]    Id. at ¶¶ 39-40.

[11]    Id. at ¶ 41.

Development stated that, while most of its intended merchandise would not require a special permit, the sale of adult sexual devices would require an adult entertainment license (under separate regulations hereinafter called the "old adult codes").[12] The County also informed Tokyo Valentino that a moratorium had been put in place on the issuance of new adult entertainment licenses.[13] Instead of applying for a new license, Tokyo Valentino filed suit in this Court on July 22, 2015 seeking an injunction and damages.

On September 1, 2015, the Court entered a Joint Consent Temporary Restraining Order, in which the County agreed to allow Tokyo Valentino to continue operating without having to obtain an adult entertainment license for ninety days, at which time the Court would schedule a preliminary injunction hearing.[14] On October 27, 2015, before the expiration of the TRO, the County adopted new regulations which substantially revised the definitions and licensing requirements of adult stores.[15] The County then filed a motion to dismiss on the basis that new regulations had

---

[12]     Id. at ¶ 42.

[13]     Id. at ¶ 44.

[14]     Joint Consent Temporary Restraining Order [Doc. 13]. Because the TRO was done by consent, no hearing was held.

[15]     Second Amended Compl. ¶¶ 46-62. These new regulations overhauled both the old zoning codes and the old adult codes.

caused the case to become moot, and Tokyo Valentino moved for leave to file a second amended complaint. The Court granted the motion to dismiss on mootness grounds, and denied Tokyo Valentino's request to file another amended complaint on January 14, 2016.[16] Tokyo Valentino appealed the dismissal, and while the appeal was pending, Gwinnett County filed suit in a Georgia court on July 8, 2016, seeking to enforce the new regulations against Tokyo Valentino.[17] The state court stayed those proceedings pending the outcome at the Eleventh Circuit.[18]

Two days after the state court's stay, the Eleventh Circuit vacated and remanded this Court's Order. The Eleventh Circuit held only that Tokyo Valentino's damages claims resulting from the old regulations could not be dismissed on mootness grounds, and that the Court could not deny Tokyo Valentino leave to file an amended complaint "based on the mere possibility that this action is unripe for review."[19] Tokyo Valentino filed its Second Amended Complaint on November 9, 2016, which seeks injunctions against the new regulations, as well as damages for injuries caused by both the old and

---

[16]     The motion to dismiss had been filed prior to the expiration of the TRO. As a result, the preliminary injunction hearing was never held.

[17]     Def.'s Mot. to Dismiss, Ex. 4 [Doc. 47-5].

[18]     Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. A [Doc. 53-1].

[19]     Tokyo Gwinnett, LLC v. Gwinnett County, Georgia, 2016 WL 5403581, at *2 (11th Cir. Sept. 28, 2016).

new regulations. Gwinnett County now moves to dismiss the Second Amended Complaint.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[20] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[21] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[22] Generally, notice pleading is all that is required for a valid

---

[20]     Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

[21]     Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

[22]     See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

complaint.[23] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[24]

## III. Discussion

### A. The Old Regulations

This case consists of two separate and independent parts: those claims based on the old regulations, and those based on the new ones. The County first moves to dismiss the claims related to the old regulations for lack of standing. In order to demonstrate standing, a plaintiff must show "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision."[25] Because Tokyo Valentino has not demonstrated that its alleged injury is redressable, or that it even suffered any actual harm as a result of the old regulations, its claims must be dismissed.

First, assuming *arguendo* that Tokyo Valentino were to successfully show that it was harmed by the old adult codes, such an injury could be not redressed by this

---

[23]     See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).

[24]     See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

[25]     Granite State Outdoor Advert., Inc. v. City of Clearwater, Fla., 351 F.3d 1112, 1116 (11th Cir. 2003).

Court. Section 230-100 of the old zoning code states that any use which is not specifically listed in the ordinance table of approved uses is presumptively prohibited.[26] Sexual paraphernalia stores are not a listed use in the table. Therefore, it stands that Tokyo Valentino's intention to sell adult sexual devices would still be prohibited by the old zoning code even if it was successful on its claims against the old adult codes.

Tokyo Valentino argues that it is not a "sexual paraphernalia" store, but rather a novelty store that just happens to sell some sexual devices. While the Court understands that the lines differentiating one land use from another can be blurry at times, that is not the case here. Upon examination, it is clear that each land use listed in the table is defined by the primary type of good or service being sold or marketed. A smoke shop's primary line of business is tobacco. A tattoo and body piercing parlor's primary lines of business are tattoos and body piercings. And a sexual paraphernalia store, meanwhile, would be that which primarily sells sexual paraphernalia. This is not to say, of course, that each store can only be categorized exclusively into one type of land use. One can imagine that a smoke shop could also be a tattoo parlor, or that a tattoo parlor could also be a sexual paraphernalia store.

---

[26]    Def.'s Mot. to Dismiss, Ex. 1, at 2 [Doc. 47-2] ("Any use not listed in said table shall be prohibited, except as contained herein.").

Presumably, then, stores that operate under multiple categories would have to comply with the zoning regulations for each type of use.

In this case, there can be no doubt that Tokyo Valentino is attempting to, at least in some respect, operate a sexual device store. Tokyo Valentino admits in the Complaint that its business is "predicated, in part, on generating the public's interest in...expressive sexually-oriented print and electronic materials,"[27] and that it "regularly advertises as one that caters to adult sexual interests..."[28] It informed the County after it had received approval to operate a tobacco shop that it intended to sell adult sexual devices.[29] The sale of adult sexual devices is fundamentally distinct from the sale of other novelties, as can be seen by the fact that it was the only line of business the County said required an additional permit.[30] It is clear that the sale of sexual devices is a primary line of business for Tokyo Valentino. But because the sale of adult sexual devices is not a listed use in the table, and because Tokyo Valentino does not

---

[27]     Id. at ¶ 64.

[28]     Id. at ¶ 76.

[29]     Def.'s Mot. to Dismiss, Ex. 3 at 31. [Doc. 47-4].

[30]     Regardless of what the Court thinks, the authority to discern and distinguish between different land uses would seem to rest squarely in the hands of the Zoning Director. In this case, the Director made the decision that selling sexual devices was not covered by any land use listed in the table.

challenge the old zoning codes, that line of business would still be prohibited regardless of the outcome of Tokyo Valentino's claims.

Tokyo Valentino argues, alternatively, that it did in fact challenge the old zoning codes, citing to ¶ 72 of the Second Amended Complaint. That section of the Complaint, however, states only that "the 2015 Adult Licensing Code, the 2015 Adult Zoning Code, and the Revised Unified Development Ordinance [the new zoning code] fail to include a 'grandfather' provision recognizing Tokyo Valentino's lawful prior nonconforming use as a 'sex paraphernalia store,'" and for violating its substantive due process rights.[31] Notwithstanding the fact that Tokyo Valentino opened its store after the old zoning codes were already in place, nowhere in the Complaint does Tokyo Valentino challenge the validity of the old zoning code's rule that any land use not listed in the table is presumptively prohibited. Without challenging this portion of the law, this Court cannot bring relief to Tokyo Valentino.[32]

Perhaps more importantly, however, is the fact that nothing in the Complaint shows that Tokyo Valentino actually suffered an injury as a result of the old regulations. Because the old regulations have been replaced, there is no longer the

---

[31]     Second Amended Compl. ¶ 72(e).

[32]     The Court also declines to give the Plaintiff leave to amend its Complaint a third time. The Plaintiff has had ample time to consider this issue, and in any event it would be futile because the Plaintiff has not suffered an injury.

threat of future harm in this case, and the only claim against the old regulations that survived appeal was Tokyo Valentino's claim for past damages. The Complaint states that Tokyo Valentino is seeking "damages for infringing on its rights,"[33] but it never describes how its rights were violated under the old regulations. In fact, the Complaint and the consent TRO entered into in this case suggest that Tokyo Valentino has continued to sell adult sexual devices during the course of this litigation, and that its business license was never revoked.[34] The closest the Complaint comes to suggesting an injury is the allegation that the County "threatened to revoke" Tokyo Valentino's business license.[35] While the threat of future harm is enough to show standing when, for example, a plaintiff is seeking an injunction or when damages may continue into the future, it is not enough when only seeking compensation for *past* damages. Because Tokyo Valentino was never actually prevented from selling adult sexual devices under the old regulations, it never suffered any actual harm.

In sum, the Plaintiff has failed to show that it suffered an actual injury as a result of the old zoning code. And even if it had, the old zoning code would still have

---

[33]     Second Amended Compl. ¶ 1.

[34]     See Joint Consent Temporary Restraining Order ¶ 1 [Doc. 13].

[35]     Id. at ¶ 65.

prohibited the sale of adult sexual devices. Accordingly, Tokyo Valentino's remaining claims related to the old regulations must be dismissed for lack of standing.

## B. The New Regulations

Tokyo Valentino also challenges the new regulations Gwinnett County adopted in 2015. The County argues, however, that because there is an ongoing case in Georgia state court, the Court should abstain from hearing these claims under Younger v. Harris.[36] Under the Younger doctrine, as elaborated by subsequent cases, Federal courts should abstain when there is (1) an ongoing state adjudicative proceeding, which (2) implicates important state interests, and which (3) offers an adequate opportunity for a plaintiff to raise its federal claims.[37] However, Younger abstention is a narrow exception to the general rule that Federal courts have a "virtually unflagging obligation" to hear cases within their jurisdiction.[38] The Supreme Court has accordingly held that Younger abstention is only appropriate in three limited types of circumstances in which there is: "(1) a parallel and pending state criminal proceeding; (2) a state civil enforcement proceeding; or (3) a state civil proceeding involving an

---

[36]    401 U.S. 37 (1971).

[37]    See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).

[38]    Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 586 (2013).

order that is 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'"[39]

This is the rare case which falls within one of these narrow exceptions, and as a result the Court finds that abstention under Younger is appropriate. Civil enforcement actions are generally "akin to criminal prosecution," and are "characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act."[40] In this case, the County, an organ of the State of Georgia, initiated an action seeking to enforce the County's zoning laws against the Plaintiff. There is no doubt that the action taken by the County in state court is a civil enforcement action.

The only remaining question is whether the state proceeding is "ongoing."[41] At first blush, the answer seems clear: because the federal case was instituted first, one

---

[39]     Dandar v. Church of Scientology Flag Serv. Org., Inc., 619 F. App'x 945, 947 (11th Cir. 2015) (quoting Sprint, 134 S. Ct. at 591).

[40]     Sprint, 134 S. Ct. at 592.

[41]     Neither party disputes that the state proceeding implicates important state interests or that it offers sufficient opportunity for the Plaintiff to raise its constitutional objections. See Zibtluda, LLC v. Gwinnett Cty., Ga. ex rel. Bd. of Comm'rs of Gwinnett Cty., 411 F.3d 1278, 1285 (11th Cir. 2005) ("it is well established that [c]ombating the harmful secondary effects of adult businesses, such as increased crime and neighborhood blight, is a substantial government interest."); Middlesex, 457 U.S. at 431 (1982) ("Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.").

might think that the state proceeding could not possibly qualify as "ongoing" at the time the federal case was filed. Indeed, this is Tokyo Valentino's primary argument. But until Tokyo Valentino filed its Second Amended Complaint (which was done after the County had filed its complaint in state court), the entire case before this Court was about the old regulations. The new regulations created an entirely new set of claims that the Court has not addressed in any way until now. In effect, Tokyo Valentino's claims with regard to the new regulations are a completely different case than its claims with regard to the old regulations. As a result, because Gwinnett County had commenced its enforcement action in state court before Tokyo Valentino filed its Second Amended Complaint addressing the new regulations, the state enforcement action was "ongoing" regarding the new claims.[42]

The Plaintiff argues that the claims should not be viewed separately, however, and that the new claims are merely an extension of the original case. In that sense, the federal action was filed long before the state court case. But even under this view, the Younger doctrine still calls for the Court to abstain. The Supreme Court has held that Younger may still apply even in situations where the state proceeding was initiated

---

[42]   In fact, the new regulations would not have even been ripe for review by this Court *until after* the County had commenced the enforcement action.

after a federal complaint has been filed.[43] In these situations, the key question is whether the federal case has had any "proceedings of substance on the merits,"[44] or if "the federal litigation [is] in an embryonic stage and no contested matter [has] been decided."[45] The Supreme Court has never expressly clarified what proceedings count as substantive, but subsequent cases have somewhat illuminated the issue.

On the one hand, the Supreme Court is clear that the issuance of a preliminary injunction is a proceeding of substance on the merits.[46] On the other, various federal courts have held that the denial of a preliminary injunction can also constitute a hearing of substance, "when coupled with a thorough evidentiary hearing."[47] The Eleventh Circuit, meanwhile, has held that while the issuance of a temporary restraining order, when coupled with a "thorough evidentiary hearing," constitutes a substantive proceeding, the "mere denial of a TRO by the district court, without more,

---

[43]    See Hicks v. Miranda, 422 U.S. 332, 349 (1975).

[44]    Id.

[45]    For Your Eyes Alone, Inc. v. City of Columbus, Ga., 281 F.3d 1209, 1217 (11th Cir. 2002) (internal quotations omitted).

[46]    See Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 238 (1984).

[47]    For Your Eyes Alone, 281 F.3d at 1217 (citing Adultworld Bookstore v. City of Fresno, 758 F.2d 1348, 1350–51 (9th Cir. 1985)).

does not..."[48] The consistent theme in these cases is that conducting hearings, receiving the submission and consideration of evidence, and deciding matters that go to the heart of the case are significantly more important than the timing of the proceedings. In other words, the threshold between substantive and non-substantive proceedings is whether the federal case has moved beyond matters of mere procedure to matters that are key to the eventual outcome of the case.

A number of factors lead the Court to find that this case has not yet crossed that threshold. Until now, the Court has yet to address the merits of any portion of this case. The Court previously dismissed the case solely on mootness grounds without ever addressing the substance of the Plaintiff's claims. And though a TRO was issued, the Court did so without ever hearing evidence because both parties had consented to it. The only matters that have been decided upon in this case have been procedural. Meanwhile, the state proceeding has already held an evidentiary hearing on an

---

[48] <u>Id.</u> at 1218.

interlocutory injunction.[49] Using the <u>Hicks</u> standard, the state court has already moved significantly further into substantive proceedings than this Court has.[50]

Tokyo Valentino argues that abstaining in this case would give the County "an expansive reverse removal power..."[51] While the Court recognizes the danger of gamesmanship on the part of prosecutors, this is not the type of case which gives rise to that concern. Abstaining with regard to the new regulations would not give "state officials expansive leeway to override a plaintiff's choice" of forum because the Plaintiff's original claims remain in the forum of its choosing.[52] Tokyo Valentino first filed suit in this Court to address the County's old regulations. The Court is not abstaining as to those claims, nor could it. In fact, had Tokyo Valentino sufficiently pleaded its claim for damages related to the old regulations, that litigation would have continued to move forward in this Court. But the claims regarding the new regulations

---

[49]     Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. A, at 2 [Doc. 53-1]. Though the request for an interlocutory injunction was denied, the state court still conducted a hearing at which it "heard evidence and argument from both sides." <u>Id.</u> The fact that the state court proceeding was stayed is irrelevant. It was stayed pending the Eleventh Circuit's decision regarding the earlier decision in this case. Now that the appeal has been resolved, the state court case will presumably move forward.

[50]     While the progress in state court is not a factor discussed by the Supreme Court for determining whether abstention is appropriate, it is helpful to consider for comity's sake and for comparative purposes.

[51]     <u>For Your Eyes Alone</u>, 281 F.3d at 1219.

[52]     <u>Id.</u>

are different. Simply because a plaintiff has one set of claims pending in federal court does not mean that <u>Younger</u> cannot apply to any new claims which may arise in the meantime. Thus, whether one considers the Second Amended Complaint to be a totally separate set of claims, or merely an extension of the old claims prior to the change in law, it is clear that the <u>Younger</u> doctrine counsels this Court to abstain from the Plaintiff's claims regarding the new regulations.

## III. Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss [Doc. 47] is GRANTED.

SO ORDERED, this 24 day of March, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge