IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TOKYO GWINNETT, LLC doing business as Tokyo Valentino, <br><br> Plaintiff, <br><br> v. <br><br> GWINNETT COUNTY, GEORGIA, et al., <br><br> Defendants. | CIVIL ACTION FILE NO. 1:15-CV-2606-TWT |

### OPINION AND ORDER

This is an action seeking to enjoin Gwinnett County's adult entertainment ordinance. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 160]. For the reasons set forth below, the Defendants' Motion for Summary Judgment [Doc. 160] is GRANTED in part and RESERVED in part.

### I. Background

The Plaintiff, Tokyo Gwinnett, LLC ("Tokyo"), is a Georgia limited liability company. (Defs.' Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Summ. J ¶ 10.) The Defendant Gwinnett County is the political subdivision of the State of Georgia in which Tokyo operates its business. (*Id.*) Land use in Gwinnett County is regulated by the Unified Development Ordinance ("UDO"). (*Id.* ¶ 34.) The UDO grants the County's Director of the Department of Planning and Development ("the Director") the authority to interpret the provisions and resolve conflicts

accordingly. (*Id.*) As of May 2015, Gwinnett County had an adult establishment licensing code and an adult entertainment zoning code ("the 2001 Codes"). (*Id.* ¶ 1.)

In May 2015, Michael Scott Morrison, Tokyo's CEO, applied for an Occupational Tax Certificate ("OTC") and business license for 1950 Pleasant Hill Road in Duluth, Georgia. (*Id.* ¶¶ 11, 17.) The application indicated that Tokyo would operate a "retail" store and included Tokyo's state-issued Retail Tobacco License. (*Id.* ¶¶ 18, 21.) On May 26, 2015, Tokyo was issued a business license that described the operation as a "tobacco store." (*Id.* ¶ 22.) The following month, Tokyo informed Gwinnett County's licensing staff that it intended to sell sexually explicit media and sexual devices. (*Id.* ¶¶ 25–26.) In response to this information, the Director requested an updated application, and Tokyo later submitted a new OTC application. (*Id.* ¶¶ 28–29.) After review of this second application, the Director determined that Tokyo was subject to the County's requirements for "adult entertainment establishments." (*Id.* ¶ 31.) As a result, Tokyo would have to either obtain a license to operate an adult entertainment establishment or amend its application to remove the sexual devices. (*Id.* ¶ 32.) Instead, Tokyo responded by filing this lawsuit. (*Id.* ¶ 33.)

Since Tokyo filed this action, there have been important factual and procedural developments. Factually, on October 27, 2015, the Gwinnett County Board of Commissioners adopted new regulations for adult establishments ("the 2015 Codes"). (*Id.* ¶ 7.) Procedurally, this case returns to the Court after the Eleventh Circuit affirmed in part and reversed in part an earlier Opinion and Order granting the

2

Defendants' Motion to Dismiss. *See generally Tokyo Gwinnett, LLC v. Gwinnett County, Ga.*, 940 F. 3d 1254 (11th Cir. 2019). This decision affirmed the Court's dismissal of the Plaintiff's compensatory damages claims regarding the 2001 Codes but allowed Tokyo to pursue its declaratory claim that its business constituted a lawful prior nonconforming use and its claims stemming from the 2015 Codes. After the Eleventh Circuit's remand of the case, the Plaintiff filed its Third Amended Complaint, alleging violations of the Due Process Clause (Count I), the Free Speech Clause (Count II), the Equal Protection Clause (Count III), and the Georgia Constitution's Takings Clause (Count IV).[1] Further, Tokyo seeks declaratory relief (Count V) against the County and two of its former employees, the Defendants Kathy Holland and Tom Doran, in their individual capacities. Finally, the Plaintiff seeks injunctive relief against Holland and Doran in their individual capacities to prevent their interference in Tokyo's business going forward (Count VI).[2] The Defendants now seek summary judgment on the Plaintiff's claims, as well as their counterclaims seeking a permanent injunction against Tokyo's alleged violations of the UDO. (Answer & Counterclaim, at ¶ 64.)

---

[1] The Defendants moved for summary judgment as to the Plaintiff's takings claim and presented arguments in support of that motion. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 41–42.) The Plaintiff failed to respond to these arguments, thereby abandoning its takings claim. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). The Court grants the Defendants' motion as to Count IV.

[2] Similarly, the Plaintiff failed to respond to the Defendants' arguments against its injunctive claim, and the Court grants the Defendants summary judgment as to Count VI. (*See* Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 42.)

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III. Discussion

### A. The Plaintiff's Claim for Declaratory Relief

The Plaintiff seeks a declaration from this Court that states either that Tokyo was lawfully operating its business under the 2001 Codes or that the 2001 Codes were unconstitutional. (Third Am. Compl. ¶¶ 89–90.) In the Plaintiff's view, "its novelty and clothing store did not fall within the definitions of an 'adult entertainment establishment' under [the 2001 Codes,]" and was thus compliant with the controlling law at the time. (*Id.* ¶ 89.) The Defendants disagree, arguing in their Brief that the Director properly determined that the Plaintiff's operation qualified as an adult entertainment establishment under the 2001 Codes. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 17.) Further, the Defendants argue that because the UDO as of May

2015 did not list uses such as "adult novelty shop" or "sexual device store," such land uses were "presumptively prohibited." (*Id.* (citing UDO § 230-100.1).) The Plaintiff disputes this reasoning, arguing that requiring merchants to list all of their wares as a potential "use" under the UDO is "an untenable legal position." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 3–4.) The Plaintiff further claims that the 2001 Codes were impermissibly vague as applied to it and "vested the County with unbridled discretion to enforce these codes based upon subjective criteria and thus encourage discriminatory enforcement." (*Id.* at 9–10.) In Reply, the Defendants note that "the Director determined that in order to open the type of store it disclosed in its (never-granted) second application, Tokyo would have to satisfy the requirements for an adult entertainment establishment[,]" which it never did. (Defs.' Reply Br. in Supp. of Defs.' Mot. for Summ. J., at 9.) As a result, the Defendants argue that the Plaintiff opened in violation of the law and therefore cannot claim a lawful prior nonconforming use. (*Id.* at 9–10.)

The Court first turns to the 2001 Codes for the regulations in place at the time of the Plaintiff's business applications. The term "adult entertainment establishment" was defined, in part, as:

> Any commercial establishment having a substantial or significant portion of its stock in trade, books, magazines or other periodicals, videotapes or movies or other reproductions, whether for sale of rent, which are distinguished or characterized by their emphasis on matter depicting, describing or relating to "specified sexual activities" as defined herein or "specified anatomical areas" as defined herein or having a segment or section comprising more than ten square feet of its total floor space, devoted to the sale or display of such material or which

5

>derives more than five percent of its net sales from the sale or rental of such material[.]

(Pl.'s Mot. for Preliminary Injunction, Ex. A, at 2.) "Specified sexual activities" is defined in part by the 2001 Codes as "direct physical stimulation of unclothed genitals[.]" (*Id.*, Ex. A, at 3.) The 2001 Codes prohibit any person or organization from operating an adult entertainment establishment "without first procuring an annual license to do so." (*Id.*, Ex. A, at 4.) Further, the 2001 Codes place location restrictions on adult entertainment establishments, prohibit their operation during certain hours, and require their employees to receive permits to work at these establishments. (*Id.*, Ex. A, at 7–8.)

Both this Court and the Eleventh Circuit have held that "the authority to discern and distinguish between different land uses would seem to rest squarely in the hands of the Zoning Director." *See, e.g.*, *Tokyo Gwinnett, LLC v. Gwinnett Cty., Ga.*, 940 F. 3d at 1265 (internal quotation marks omitted). In a July 7, 2015 letter to the Plaintiff's counsel, the Director wrote that he had received a list of five "types of merchandise" that the Plaintiff intended to sell. (Defs.' Br. in Opp'n to Pl.'s Mot. for Preliminary Injunction, Ex. H, at 1.) In addition to tobacco products, clothing, and personal care items, the list included sexually explicit media and "adult products . . . commonly used to stimulate human genitals." *(Id.*, Ex. H, at 3.) In listing sexually explicit media as part of its merchandise, the Plaintiff acknowledged the relevant limitations on stores without adult entertainment licenses—the merchandise must take up less than 10 square feet of floor space and must not represents more than 5%

6

of net sales. (*Id.*) After review, the Director determined that an adult entertainment license would be required:

> An adult entertainment license is required because if your client were to sell [adult products and devices], the business would then be a commercial establishment having a substantial or significant portion of its stock in trade which is distinguished or characterized by its emphasis on matter depicting, describing, or relating to specific sexual activities or specified anatomical areas as defined by the County's ordinances, and/or having more than ten square feet of its total floor space devoted to the sale or display of such material, and/or which derives more than five percent of its net sales from the sale or rental of such material.

(*Id.*, Ex. H, at 1.) The Director presented the Plaintiff with two options: continue operating its business without sexual devices or apply for an Adult Entertainment License, though at the time the County had issued a moratorium on issuing such licenses. (*Id.*, Ex. H, at 2.) The undisputed facts indicate that Tokyo did not select one of the options provided by the Director and instead filed this action. (Pl.'s Response to Defs.' Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Summ. J. ¶ 33.)

Upon this record, the Plaintiff has failed to show that there exists a genuine issue of material fact with regards to its claim for declaratory relief. The Plaintiff claims that the "County cites no law nor does it adequately explain why Tokyo should not be treated as a tobacco or novelty shop under the UDO before the adoption of the [2015 Codes]." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. at 8.) The Director's letter and Affidavit dispel that argument. In that letter, the Director informed the Plaintiff that selling the sexual devices would mean the business had "a substantial or significant portion of its stock in trade which is distinguished or characterized by

7

its emphasis on matter . . . relating to specified sexual activities[.]" (Defs.' Br. in Opp'n to Pl.'s Mot. for Preliminary Injunction, Ex. H, at 1.) The Director therefore cited the 2001 Codes in his letter informing the Plaintiff that its application indicated it would operate an adult entertainment establishment. While the Plaintiff disagreed with the Director's conclusion, the Director had the requisite discretion and authority to make such a decision. The Plaintiff never sought an adult entertainment license but began selling sexual devices at the location, which produce the majority of its revenue. (Pl.'s Response to Defs.' Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Summ. J. ¶¶ 33, 42–43.) By failing to secure an adult entertainment license, the Plaintiff failed to comply with the Director's guidance and thus was never in compliance with the 2001 Codes. This noncompliance precludes any claim that it had a lawful prior nonconforming use under the 2001 Codes, and thus it is not entitled to a declaration saying otherwise. The Plaintiff alternatively seeks a declaration that the 2001 Codes are unconstitutional for the reasons stated in its due process clause and free speech claims. As described below, those claims fail, and the Court grants the Defendants summary judgment as to Count V.

### B. The Plaintiff's Due Process Claim

The Plaintiff alleges that the Defendant deprived it of "rights and liberty interests protected by the Fourteenth Amendment" through arbitrary and capricious actions and impermissibly vague regulations. (Third Am. Compl. ¶ 74.) Further, the Plaintiff claims that the Defendant's regulations "violate the substantive due process clauses of the Georgia and federal Constitutions because they unjustifiably infringe

[upon] a right to engage in acts of private consensual sexual intimacy, a revealed by the underinclusive exceptions[.]" (*Id.* ¶ 74(f).) In their Brief, the Defendants point to the Eleventh Circuit's decision in *Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1177–78 (11th Cir. 2018), which rejected a similar claim brought by a similar Plaintiff. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 32.) Further, the Defendant argues that the regulation survives rational basis scrutiny by combating the secondary effects of these establishments. (*Id.* at 33.)[3]

The Plaintiff makes several due process claims.[4] First, the Plaintiff argues that the failure to "'grandfather' Tokyo's prior nonconforming use as a 'sex paraphernalia store[]'" deprives Tokyo of certain property and liberty interests protected by the Due Process Clause. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 2.) The Plaintiff concedes that "the dispositive question here is whether Tokyo was operating 'lawfully' when it opened in the summer of 2015." (*Id.*) As the Court found above, the Director properly determined it did not open lawfully. Thus, the County's failure to "grandfather" their nonconforming use does not represent a due process

---

[3] In their Reply Brief, the Defendants argue that the Plaintiff failed to address these arguments in its Opposition Brief and thus abandoned its due process claim. (Defs.' Reply Br. in Supp. of Defs.' Mot. for Summ. J., at 6 n.1.) The Defendants are correct that the Plaintiff failed to directly address their specific arguments, but the Plaintiff does make some arguments in support of its due process claims. Therefore, the Court will not deem the claims abandoned.

[4] In its Third Amended Complaint, the Plaintiff includes numerous subparagraphs under its Due Process and Free Speech claims (Counts I & II). However, the Plaintiff's briefing only refers to a small subset of the claims and legal theories made in those subparagraphs. The Court will address only those claims and theories articulated in its brief and deems the remaining claims abandoned.

violation. Second, the Plaintiff claims that the County's categorization of its business represents an arbitrary and irrational government action that infringed on its state-created rights. (*Id.* at 3.) The Plaintiff argues that it "opened as a tobacco and novelty shop," and the Director's decision to require an adult entertainment license represented arbitrary exercise of "absolute discretion to accept or terminate a business that otherwise meets the definition of a recognized use." (*Id.* at 3, 7.) However, the Director's actions were not arbitrary and capricious in a way that violated the Plaintiff's due process rights. The Plaintiff is correct that it did open its doors as a properly licensed tobacco shop. (Defs.' Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Summ. J. ¶¶ 22–23.) As the Director explained in his letter, selling tobacco, clothing, personal care items, and a limited amount of adult media would not require an adult entertainment license, and the Plaintiff's operation could continue without a license if the merchandise was limited to those items. (Defs.' Br. in Opp'n to Pl.'s Mot. for Preliminary Injunction, Ex. H, at 1.) However, after opening as a tobacco shop, it informed the County that it intended to sell sexual devices, and the Director determined that such a change would require the issuance of an adult entertainment license under the 2001 Codes. (*Id.*, Ex. H, at 1–2.) Plaintiff did not seek such a license and began selling these devices. (Defs.' Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Summ. J. ¶¶ 32–33, 41–43.) While the Plaintiff disagrees with the Director's conclusion, that conclusion had a reasonable basis in the 2001 Codes and was not an "arbitrary and irrational

10

governmental action." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 3 (internal quotation marks omitted).) As a result, the Plaintiff's due process claim fails.

### C. The Plaintiff's Free Speech Claim

The Defendants raise several arguments against the Plaintiff's free speech claims. First, the Defendants claim that "operating a sex paraphernalia store is *not* inherently expressive conduct" and thus cannot serve as the basis of a free speech claim. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 23–26.) Second, if the First Amendment does apply to such conduct, the Defendants argue the 2015 Codes satisfy intermediate scrutiny. (*Id.* at 26–29.) In response, the Plaintiff does not address whether this conduct falls within the ambit of the First Amendment. Instead, the Plaintiff claims that genuine fact issues preclude summary judgment on its First Amendment retaliation claim, as it argues that the Director's actions "were intended to discriminate against what the County viewed as an unwanted 'adult' business." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 16.) Specifically, the Plaintiff says the Director failed to follow the UDO's mandate that he determine the most appropriate zoning district for Tokyo and that the Director "unlawfully reduced both the quantity and accessibility of erotic speech and expression with[in] the County." (*Id.* at 17–18.) In reply, the Defendants argue that the Plaintiff's retaliation claim was "previously dismissed." (Defs.' Reply Br. in Supp. of Defs.' Mot. for Summ. J., at 20.)

The Court begins with the Plaintiff's First Amendment Retaliation claim. For the Plaintiff to prevail on this claim, it must show that it engaged in protected

11

expression, that the Defendants' conduct adversely affected that expression, and the adverse action was taken to limit that expression. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019). The Plaintiff provides no argument to support the notion that its decision to sell sexual devices constitutes expression protected under the First Amendment. A finding that the mere decision to sell such merchandise does not constitute expression would end the inquiry here. But even assuming such conduct did implicate the First Amendment, the Plaintiff's claim still fails. The Plaintiff argues that "the inferences at this stage suggest[] [that] the Director's actions were intended to discriminate against what the County viewed as an unwanted 'adult' business." (Pl.'s Br. in Opp'n to Defs.' Mot for Summ. J., at 16.) The Plaintiff draws these inferences from actions by the County and the Director. First, despite the care the Plaintiff took to limit the sexual media to less than ten square feet of its store, the County began a moratorium on adult entertainment licenses, threatened to revoke the Plaintiff's business license, and informed the Plaintiff that it would need to obtain a proper license to continue operation. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 16–17.) Second, the Plaintiff claims that the Director failed to follow the UDO and suggest an alternative zoning district for the Plaintiff's operation. (*Id.* at 17–18.) This alleged failure indicated to the Plaintiff that neither the County nor the Director was "interested in voicing any recognition or accommodation which would allow Tokyo to continue operating." (*Id.* at 18.) However, the Plaintiff provides no evidence to support the claim that these actions were taken to chill any possible expression. Instead, the Plaintiff merely notes that the letter it

received from the Director "was most unusual" and presumes bad-faith motives of the County and Director. (*Id.* at 17.) At this stage, more is needed than inferences and suspicions. The Plaintiff's First Amendment retaliation claim fails.

The Plaintiff also claims that the 2015 Codes would unlawfully reduce erotic speech and expression within Gwinnett County. As with the First Amendment retaliation claim, a finding that selling sexual devices does not implicate the First Amendment would end this inquiry at the outset. But even if such a right were implicated, the County's regulations do not run afoul of the Constitution's protections. "A zoning ordinance designed to regulate the negative secondary effects of adult businesses, justified without reference to the content of the regulated speech, is considered a content neutral time, place, and manner restriction." *Stardust, 3007 LLC*, 899 F.3d at 1173. Such ordinances comply "with the First Amendment if it is designed to serve a substantial government interest and leaves open alternative avenues of communication." *Id.*

The County has satisfied its burden here. As to whether the 2015 Codes serve a substantial government interest, the undisputed facts show that the County "considered extensive evidence of the negative secondary effects of" "adult establishments, including sex paraphernalia stores." (Defs.' Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Summ. J. ¶¶ 6–7 (internal quotation marks and punctuation omitted).)[5] In its legislative findings, the Board of Commissioners

---

[5] The Plaintiff's arguments against the facts in paragraph 7 fail to account for the fact that 1) "such businesses" are defined in the preceding paragraph and 2) the

13

incorporated the findings of "74 judicial decisions and 36 secondary effects reports" and determined that "[a]dult establishments, as a category of commercial uses, are associated with a wide variety of adverse secondary effects[.]" (*Id.* ¶¶ 8–9.) The Plaintiff claims that the Defendants' assertions that the Board relied on these sources to make its determination is a legal conclusion and cannot be accepted by the Court. (Pl.'s Response to Defs.' Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Summ. J. ¶¶ 8–9.) But the Plaintiff provides no evidence to suggest the Board failed to rely on these sources, or that these sources do not support the Board's ultimate conclusion. Indeed, the cases and reports cited by the Board appear to provide at least some basis for the Board's determination. *See, e.g.*, Defs.' Notice of Filing Ex. 9, Ex. 15, at 2–11; *World Wide Video of Wash., Inc. v. City of Spokane*, 368 F.3d 1186, 1198 (9th Cir. 2004). Because the Defendants have pointed to specific evidence that supported the passage of the 2015 Codes and the Plaintiff has not cast doubt on this rationale, the 2015 Codes serve the County's "substantial interest . . . in regulating native secondary effects of adult businesses." *Stardust, 3007 LLC*, 899 F.3d at 1174.

The County has also satisfied its burden as to alternative avenues of speech and expression. "A new zoning regime must leave adult businesses with a reasonable opportunity to relocate, and the number of sites available for adult businesses must

---

record includes case citations that support the Defendants' claim even if the record itself does not support the relevant claim. (*See* Pl.'s Response to Defs.' Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Summ. J. ¶ 7.) As such, the Plaintiff's arguments are rejected, and the fact is deemed admitted.

be greater than or equal to the number of adult businesses in existence at the time the new zoning regime takes effect." *Stardust, 3007 LLC*, 899 F.3d at 1175 (internal quotation marks and punctuation omitted). The Defendant has presented evidence that there were 47 available parcels of land available to adult entertainment establishments under the 2001 Codes and 125 such parcels under the 2015 Codes. (Lackey Aff. ¶¶ 60–61.) The record does not establish the number of adult entertainment establishments operate within the County, but the Plaintiff does not challenge these numbers as insufficient for relocation. Instead, the Plaintiff relies upon an assertion that the County has eliminated or is attempting to eliminate all adult entertainment businesses. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 18.) This argument represents "speculative reasoning" that "is insufficient to survive summary judgment." *Stardust, 3007 LLC*, 899 F.3d at 1175. Because there existed alternative avenues of speech and expression for the Plaintiff, the 2015 Codes satisfy the relevant constitutional requirements, and the Plaintiff's free speech claim fails.

### D. The Plaintiff's Equal Protection Claim

The Supreme Court has recognized a "class of one" equal protection claim in which "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The County argues that the Plaintiff has shown neither different treatment of sufficiently similar entities nor a lack of a rational basis of their actions to support such a "class of one" claim. (Defs.' Mot. for Summ. J., at 29–31.) In response, the Plaintiff argues that the

15

County lacked a rational basis for allowing the display of more than 100 sexual devices within a "regional shopping mall" or a "pharmacy or establishment primarily dedicated to providing medical products." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 19–22.) The Plaintiff attacks this distinction as arbitrary and points to Georgia Supreme Court precedent that struck down an allegedly similar distinction. (*Id.* at 22–25.) In their Reply Brief, the Defendants note that the Plaintiff failed to show "a similarly situated comparator that is being treated differently, or that pharmacies or stores inside a regional shopping center are" identical for purposes of this equal protection analysis. (Defs.' Reply Br. in Supp. of Defs.' Mot. for Summ. J., at 22.)

The identification of some comparator is required in these "class of one" claims "because different treatment of dissimilarly situated persons does not violate the equal protection clause." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006). To be similarly situated, these entities "must be *prima facie* identical in all relevant respects." *Id.*; *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) ("[W]hen plaintiffs in 'class of one' cases challenge the outcome of complex, multi-factored government decisionmaking processes, similarly situated entities must be very similar indeed." (internal quotation marks omitted)). To survive summary judgment, Tokyo was required to present evidence indicating a genuine issue of fact that at least one similarly situated entity received better treatment from the County. But Tokyo failed to identify a similar entity, instead relying on a hypothetical scenario in which a popular pharmacy chain decides to sell certain sexual devices and arguing that the 2015 Codes' distinctions "are not directly related

to the County's purported legislative purpose." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 21–22.) The Plaintiff does not argue or present evidence to suggest that a pharmacy chain is identical to its operation but focuses exclusively on the distinctions it argues are arbitrary and discriminatory. In doing so, the Plaintiff fails to satisfy a threshold requirement for any "class of one" claim. As a result, the County's motion for summary judgment is granted as to the Plaintiff's equal protection claim, and all of the Plaintiff's claims against the Defendants have been abandoned or fail as a matter of law.

### E. The Defendants' Counterclaims

The County claims that Tokyo has violated the Occupation Tax and Business Regulation Ordinance, the UDO, and the Adult Establishment Licensing Ordinance. (Defs.' Answer & Counterclaims ¶¶ 47–63.) Due to these alleged violations, the County seeks a permanent injunction against the Plaintiff and its operators. In support of its injunctive claim, the County relies exclusively on Georgia law, arguing that O.C.G.A. § 9-5-1 allows a court to enjoin an "act of a private individual or corporation which is illegal[.]" (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 11.) In response, the Plaintiff appears to argue against the exercise of this Court's supplemental jurisdiction, arguing that the County is seeking "a drastic state-law remedy in federal court[] while asking the Court to dismiss Tokyo's underlying bases for federal jurisdiction." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 25.) Further, the Plaintiff argues that an injunction against the Counter-Defendants is unwarranted as "the County has offered no facts to show that it can pierce the

17

corporate veil to add" these individuals to the injunction. (*Id.*) In reply, the County urges this Court to exercise supplemental jurisdiction over its counterclaim and argues that the requested injunction would not require any piercing of the corporate veil. (Defs.' Reply Br. in Supp. of Defs.' Mot. for Summ. J., at 26–27.)

To the extent the Plaintiff argues against the exercise of this Court's supplemental jurisdiction over the County's counterclaim, that argument is rejected. Although 28 U.S.C. § 1367(c)(3) grants the Court discretion to dismiss state law claims after the dismissal of the claims granting this Court original jurisdiction, a review of all of the factors listed § 1367(c) weigh against dismissal in this case. In particular, the § 1367(c) factors all support the exercise of supplemental jurisdiction in this case, which has been litigated before the Court for nearly seven years. *See, e.g.*, *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 745–47 (11th Cir. 2006) (detailing the § 1367(c) factors). The Court grants summary judgment in favor of the County on its claim that Tokyo Gwinnett, LLC is illegally operating the business at 1950 Pleasant Hill Road, Duluth, Georgia. However, a hearing will be required to determine whether irreparable injury, the balance of the harms and the public interest support a permanent injunction against the Counterclaim Defendant and the Third-Party Defendants.

## Conclusion

For the reasons set forth above, the Defendants' Motion for Summary Judgment [Doc. 160] is GRANTED. The Defendants' Motion is granted as to all of the Plaintiff's claims. As a result, the Clerk is DIRECTED to terminate Kathy Holland

and Tom Doran as parties to this action. A hearing on the County's counterclaim and third-party claim will be set at a later date.

SO ORDERED, this  6th  day of April, 2022.

*[Signature]*
THOMAS W. THRASH, JR.
United States District Judge